IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LIZBETH RIVAS GARCIA, et al. | * | |
| Plaintiffs, | * | |
| v. | * | Civil No.: BPG-20-3630 |
| WAL-MART STORES EAST, LP | * | |
| | * | |
| Defendant | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

The above-referenced case was referred to the undersigned for all proceedings with the consent of the parties, pursuant to 28 U.S.C. 636(c) and Local Rule 301.4. (ECF Nos. 15, 16). Currently pending are defendant's Motion for Summary Judgment ("Motion") (ECF No. 25), plaintiff's Opposition to the Defendant's Motion for Summary Judgment ("Opposition") (ECF No. 30), and defendant's Reply to Plaintiff's Opposition to its Motion for Summary Judgment ("Reply") (ECF No. 32). No hearing is deemed necessary. Loc. R. 105.6. For the reasons discussed herein, defendant's Motion for Summary Judgment (ECF No. 25) is DENIED.

**I.   BACKGROUND**

In ruling on a motion for summary judgment, this court considers the facts and draws all reasonable inferences in the light most favorable to the nonmoving party, which is the plaintiff in this case. Scott v. Harris, 550 U.S. 372, 378 (2007). Plaintiff Lizbeth Rivas Garcia ("plaintiff") allegedly sustained personal injuries on October 8, 2018, when she slipped and fell on liquid located on the floor while at a store owned and operated by defendant Wal-Mart Stores East, LP

("defendant" or "Walmart") in Frederick, Maryland. (Am. Compl., ECF No. 4 at ¶¶ 5, 10). This incident was captured on defendant's surveillance video footage ("video footage"), which shows plaintiff was shopping in front of a refrigerated "vegetable wall" in the fresh produce department at the time of her fall. (ECF No. 25-5 at 55:56-56:22). During her deposition, plaintiff testified that just prior to her fall, she went to get peppers located along the vegetable wall. (ECF No. 25-2 at 5). After noticing that there were no bags above the peppers, plaintiff walked approximately four to five steps along the vegetable wall to the cilantro where she grabbed a bag for her peppers. (Id. at 6). The video footage shows that as plaintiff walked back to her cart near the section of the vegetable wall where the peppers were located, she fell. (ECF No. 25-5 at 56:15-56:22). While the floor where plaintiff fell is not visible on the video footage, plaintiff testified that after her fall, she saw water on the floor and "was wet all over," although she did not know whether it was a puddle or a trail of water. (ECF No. 25-2 at 7). Walmart's then-Assistant Manager Ganesh Shrestha ("Mr. Shrestha") prepared an incident report which also identified the liquid on the floor as water. (ECF No. 31-3 at 15-16). Plaintiff, however, testified that she did not see any water on the floor or any wet floor cones prior to her fall. (ECF No. 25-2 at 8-9).

For at least 56 minutes before plaintiff fell, the video footage depicts an orange cone[1] and paper towels located on the floor in front of a flower display. (ECF No. 25-5 at 0:05-56:20). The flower display, which contained buckets of water, was leaking on the day plaintiff fell. (ECF No. 30-1 at 17, 33). Defendant's corporate designee, Ann Marie Mimitz ("Ms. Mimitz"), testified that the flower display, which was known by defendant to leak in the past, was approximately four to six feet away from a mat located on the floor in front of the vegetable wall. (Id. at 106). The video

---

[1] Mr. Shrestha testified during his deposition that an orange cone on the floor indicates that the floor is wet or is going to be wet. (ECF No. 30-1 at 21).

footage shows the mat is located to the right of the area where plaintiff grabbed a bag for her peppers. (ECF No. 25-5 at 56:12). Approximately one minute after plaintiff's fall, the video footage shows a Walmart employee place an orange cone on the floor where plaintiff fell. (Id. at 57:41). The employee subsequently placed a second orange cone on top of the mat. (Id. at 58:03-58:24). Approximately two minutes later, another Walmart employee, Joshua Zimmerman ("Mr. Zimmerman"), arrived on the scene and began placing paper towels on the floor where plaintiff fell and pushed the paper towels with his feet along the floor in front of the vegetable wall, including in front of and around the mat and the flower display. (Id. at 59:58-1:05:20). The flower display, however, continued to leak even after Mr. Zimmerman used paper towels to dry the floor in front of the flower display. (ECF No. 30-2 at 3-8).

In the 56 minutes leading up to plaintiff's fall, dozens of people, including plaintiff, other customers, and Walmart employees, walked along and near the area where plaintiff fell. (ECF No. 25-5 at 0:05-56:25). The video footage, however, does not depict anyone other than plaintiff slipping or falling, or show any Walmart employee reacting or responding to anything on the floor. (Id.) In addition, the video footage does not indicate when or how the water spilled on the floor where plaintiff fell, and the water is not visible on the video footage. (Id.)

On June 18, 2020, plaintiff filed suit against defendant in the Circuit Court for Frederick County, Maryland. (ECF No. 2). On December 2, 2020, plaintiff filed an Amended Complaint, in which Yotsy Ruiz Perez, plaintiff's husband, was added as a plaintiff.[2] (ECF No. 4). Plaintiff states a negligence claim, asserting that defendant breached its duty of care to her by failing to properly clean up water on the floor, warn plaintiff of such hazardous condition, properly supervise

---

[2] Mr. Ruiz Perez states a claim for loss of consortium (ECF No. 4 at 3-4), which, as defendant notes, is derivative of Ms. Garcia's negligence claim (ECF No. 25-1 at 1 n.1). So as to avoid confusion, "plaintiff," as used in this opinion, will refer only to Ms. Garcia.

and maintain the area in question in a safe condition, properly inspect the area, and exercise the degree of care required under the circumstances. (Id. ¶ 7). Plaintiff seeks damages in an amount greater than $75,000. (Id. ¶ 1). On December 16, 2020, the case was removed to this court on the grounds of diversity of citizenship pursuant to 28 U.S.C. § 1332(a). (ECF No. 1). Discovery closed on July 7, 2021, and thereafter, the pending Motion and related pleadings were filed.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is properly considered "material" only if it might affect the outcome of the case under the governing law. Id. The party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact. Fed. R. Civ. P. 56(a); Pulliam Inv. Co., Inc. v. Cameo Props., 810 F.2d 1282, 1286 (4th Cir. 1987). On those issues for which the non-moving party will have the burden of proof, however, it is his or her responsibility to oppose the motion for summary judgment with affidavits or other admissible evidence specified in Federal Rule of Civil Procedure 56. Fed. R. Civ. P. 56(c); Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1315-16 (4th Cir. 1993). If a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment is proper. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

When reviewing a motion for summary judgment, the court does not evaluate whether the evidence favors the moving or non-moving party, but considers whether a fair-minded jury could return a verdict for the non-moving party on the evidence presented. Anderson, 477 U.S. at 252.

In undertaking this inquiry, the court views all facts and makes all reasonable inferences in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The non-moving party, however, may not rest on its pleadings, but must show that specific, material facts exist to create a genuine, triable issue. Celotex, 477 U.S. at 324. A "scintilla" of evidence in favor of the non-moving party, however, is insufficient to prevent an award of summary judgment. Anderson, 477 U.S. at 252. Further, "mere speculation" by the non-moving party or the "building of one inference upon another" cannot create a genuine issue of material fact. Cox v. Cnty. of Prince William, 249 F.3d 295, 299-300 (4th Cir. 2001). Summary judgment should be denied only where a court concludes that a reasonable jury could find in favor of the non-moving party. Anderson, 477 U.S. at 252.

## III. DISCUSSION

Defendant moves for summary judgment, asserting that plaintiff cannot establish a prima facie case of negligence because plaintiff failed to present evidence that defendant breached a duty of care. (ECF No. 25-1 at 1). To assert a claim of negligence in Maryland, plaintiff must prove that: (1) the defendant was under a duty to protect plaintiff from injury, (2) the defendant breached that duty, (3) plaintiff suffered actual injury or loss, and (4) the injury or loss proximately resulted from defendant's breach of duty.[3] 100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co., 430 Md. 197, 212-13, 60 A.3d 1, 10 (2013). As a customer in a store maintained by defendant, plaintiff was a business invitee to whom defendant owed a duty to "use reasonable and ordinary care to keep the premises safe . . . and to protect [her] from injury caused by an unreasonable risk that

---

[3] Because the court's jurisdiction over this matter is based on diversity of citizenship, the court must apply Maryland law to issues of substantive law. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Wells v. Liddy, 186 F.3d 505, 527-28 (4th Cir. 1999) ("As a court sitting in diversity, we have an obligation to interpret the law in accordance with the Court of Appeals of Maryland, or where the law is unclear, as it appears that the Court of Appeals would rule.").

[she], exercising ordinary care for [her] own safety, [would] not discover." Henley v. Prince George's Cnty., 503 A.2d 1333, 1343 (Md. 1986). "[N]o presumption of negligence on the part of the proprietor," however, "arises merely from a showing that an injury was sustained in his store." Garner v. Supervalu, Inc., 396 Fed. App'x 27, 29 (4th Cir. 2010). Maryland courts have emphasized that a store operator is "not an insurer of the safety of his customers," Moulden v. Greenbelt Consumer Servs., Inc., 210 A.2d 724, 725 (Md. 1965), and have held that it would be unreasonable to impose a duty on a proprietor to continuously inspect the premises. See, e.g., Lexington Mkt. Auth. v. Zappala, 233 Md. 444, 446, 197 A.2d 147, 148 (Md. 1964) (commercial business owner did not breach duty of care by failing to instantaneously detect and correct dangerous condition of oil or grease on parking garage floor which allegedly caused customer to fall). Accordingly, "the burden is upon the customer to show that the proprietor created the dangerous condition or had actual or constructive knowledge of its existence." Id.

The issue in this case is whether defendant created or had actual or constructive knowledge of the hazardous condition (i.e., the water on the floor where plaintiff fell) and, therefore, breached its duty of care to plaintiff. Defendant first argues that it did not have actual knowledge of the existence of the water on the floor prior to plaintiff's fall. (ECF No. 25-1 at 7-8). Plaintiff contends that defendant had actual knowledge of the water on the floor based on testimony by Mr. Shrestha and defendant's corporate designee, Ms. Mimitz, indicating the existence of a water leak coming from the flower display, video footage showing an orange cone and paper towels in front of the flower display prior to plaintiff's fall, and photographs taken by Walmart employees showing a puddle of water in front of the flower display. (ECF No. 30 at 17-19).

While it is true that the evidence presented by plaintiff establishes that defendant had actual knowledge of the water leak in front of the flower display, there is no evidence that defendant had

6

actual knowledge of the water in the area where plaintiff fell, which was some distance away from the flower display in front of the vegetable wall.[4] In addition, plaintiff presents no evidence that defendant had actual knowledge that water leaking from the flower display had spread along the floor in front of the vegetable wall to the area where plaintiff fell. As defendant notes, the video footage does not show the water on the floor, its source, or any Walmart employee reacting or responding to anything on the floor. (ECF No. 25-1 at 7). Mr. Shrestha also testified during his deposition that there were no other reports of water on the floor or someone slipping on water the day plaintiff fell (ECF No. 25-3 at 7), and that he was unable to identify the source of the water on the floor and no other Walmart employees told him anything about water on the floor (id. at 9). In addition, as defendant notes, plaintiff testified during her deposition that she had no reason to believe that any Walmart employee knew about the liquid on the floor prior to her fall. (ECF No. 25-2 at 10).[5] Plaintiff, therefore, fails to meet her burden of generating a genuine issue of material fact as to whether defendant had actual knowledge of the water on the floor where plaintiff fell. See Wiseman v. Wal-Mart Stores, Inc., No. 1:16-cv-04030-SAG, 2017 WL 3334858, at *4 (D. Md. Aug. 4, 2017) (holding that there was no genuine dispute of material fact as to defendant's actual knowledge of a spill when Walmart employees were merely in proximity to the spill and

---

[4] While neither party provides evidence of the exact distance between the flower display and the area where plaintiff fell, the video footage shows a Walmart employee take approximately 10 steps from the flower display to the area where plaintiff fell. (ECF No. 25-5 at 58:15-58:30).

[5] Additionally, plaintiff argues that she heard Mr. Shrestha tell another Walmart employee that "he should have known better to keep that area dry." (ECF No. 30 at 19). Contrary to plaintiff's assertion, however, Mr. Shrestha's alleged statement does not provide evidence that Mr. Shrestha or any other Walmart employee had actual knowledge of the water in the area where plaintiff fell. At best, assuming Mr. Shrestha was even referring to the area where plaintiff fell, Mr. Shrestha's statement is relevant only as to whether defendant had constructive knowledge of the hazardous condition.

7

two Walmart store managers testified that they did not receive or know of any reports of a spill in the area where plaintiff fell).

There is evidence, however, that defendant had constructive knowledge of the water on the floor in the area where plaintiff fell.  A plaintiff may establish constructive knowledge if the plaintiff shows that the hazardous condition existed for a sufficient period of time for a proprietor to discover the defect and remedy it prior to plaintiff's injury.  Deering Woods Condo. Ass'n v. Spoon, 377 Md. 250, 267-68, 833 A.2d 17, 26-27 (Md. 2003) ("[I]f it is shown that the conditions have existed for a time sufficient to permit one, under a duty to know of them, to discover them, had he exercised reasonable care, his failure to discover them may in itself be evidence of negligence sufficient to charge him with knowledge of them.") (quoting Moore v. Am. Stores Co., 169 Md. 541, 182 A. 436, 440 (1936)).  The Maryland courts refer to this type of evidence as "time on the floor" evidence.  See Saunders v. Wal-Mart Stores, Inc., JKS-09-2330, 2010 WL 1416542, at *3 (D. Md. Apr. 5, 2010) (citing Joseph v. Bozzuto Mgmt. Co., 173 Md. App. 305, 315-316, 918 A.2d 1230, 1236 (Md. Ct. Spec. App. 2007)).  Evidence of "the size or nature of the spill is not a substitute for 'time on the floor' evidence."  Id. at *4.  Rather, the court looks to the circumstances surrounding plaintiff's incident.  Deering Woods, 377 Md. at 264, 833 A.2d at 24-25 ("What will amount to sufficient time depends upon the circumstances of the particular case, and involves consideration of the nature of the danger, the number of persons likely to be affected by it, the diligence required to discover or prevent it, opportunities and means of knowledge, the foresight which a person of ordinary care and prudence would be expected to exercise under the circumstances, and the foreseeable consequences of the conditions.") (quoting Moore, 169 Md. 541, 182 A. at 440).

In this case, defendant argues that there is no "time on the floor" evidence to establish that Walmart had constructive knowledge of the water in the area where plaintiff fell. (ECF No. 25-1 at 13-14). Specifically, defendant contends that neither plaintiff nor Mr. Shrestha knew the source of the water in the area where plaintiff fell or how long the water had been on the floor prior to her fall. (Id.) Defendant also notes that the video footage "does not show the substance on the floor or its cause," and that it would constitute "pure speculation" for a jury to assert otherwise. (Id. at 14). Contrary to defendant's position, however, there is evidence from which a jury could make a legitimate inference that water leaking from the flower display caused water to spread along the floor in front of the vegetable wall to the area where plaintiff fell. For example, for at least 56 minutes prior to plaintiff's fall, the video footage depicts an orange cone and paper towels in front of the flower display, indicating that the area was wet from a water leak coming from the flower display.[6] (ECF No. 25-5 at 0:05-56:20). In addition, defendant's corporate designee, Ms. Mimitz, testified during her deposition that the flower display had leaked in the past due to a clogged drain. (ECF No. 30-1 at 106). Further, photographs taken by a Walmart employee show that water continued to leak from the flower display onto the floor even after plaintiff's fall. (ECF No. 30-2 at 3-8). Based on Mr. Shrestha's testimony that it is possible for someone with a cart to run over water already on the floor and push the water along the floor (ECF No. 30-1 at 20), a jury could reasonably conclude that the water leaking from the flower display was pushed along the floor to the area where plaintiff fell.

Further, the video footage shows that following plaintiff's fall, Mr. Zimmerman used paper towels to dry the area where plaintiff fell and pushed the paper towels with his feet in a continuous

---

[6] Mr. Shrestha testified during his deposition that the flower display contained buckets of water. (ECF No. 30-1 at 16).

path along the floor, including in front of and around the mat on the floor in front of the vegetable wall (ECF No. 25-5 at 59:58-1:05:20), which Ms. Mimitz testified was approximately four to six feet away from the leaking flower display (ECF No. 30-1 at 106). Mr. Zimmerman also used paper towels to dry the area directly in front of the flower display. (ECF No. 25-5 at 1:02:45-1:04:45). From this evidence, a jury could reasonably infer that the water leaking from the flower display spread along the floor in front of the vegetable wall, causing plaintiff to fall.

In addition, as plaintiff notes, Collins v. Wal-Mart Stores East, LP, WDQ-13-0532, 2014 WL 583066 (D. Md. Feb. 12, 2014) supports her position that there is sufficient "time on the floor" evidence in this case. In Collins, the plaintiff slipped and fell on water at a Walmart. 2014 WL 583066, at *1. Video footage, however, did not show any other customer or employee slip on the water or look at the ground where plaintiff fell prior to her fall. Id. at *2. Moreover, the video footage in Collins did not show the water or how the water got on the floor. Id. Similarly, here, the video footage does not depict anyone other than plaintiff slipping or falling or show either the water on the floor where plaintiff fell or a Walmart employee reacting or responding to anything on the floor. (ECF No. 25-5 at 0:05-56:25). In addition, the video footage does not provide evidence of how or when the water got on the floor where plaintiff fell. Id. A jury, therefore, could reasonably infer that the water was already on the floor where plaintiff fell before the time recorded in the video footage, and that the water that caused her fall was on the floor for at least 56 minutes prior to her fall. See Collins, 2014 WL 583066, at *6 (denying summary judgment and holding that, given the lack of evidence of a spill occurring in the area where plaintiff fell, a reasonable juror could infer that the spill causing plaintiff's fall occurred before the time recorded in the video, and that the water was on the floor for at least 64 minutes before plaintiff fell). Further, given defendant's knowledge about water leaking from the flower display, which was in

close proximity to the area where plaintiff fell, a reasonable jury could also conclude that defendant breached its duty of care to plaintiff by failing to inspect the area and discover the water on the floor where plaintiff fell. See id. The court, therefore, concludes that there is sufficient "time on the floor" evidence to suggest that defendant had constructive knowledge of the water in the area where plaintiff fell. Accordingly, summary judgment is not warranted on this issue.

In addition, there is also evidence that defendant created the hazardous condition causing plaintiff to fall. As plaintiff notes, a jury could reasonably conclude that defendant created the hazardous condition because it knowingly used a leaking flower display, which, given the evidence discussed above, arguably could have caused the water on the floor in the area where plaintiff fell. (ECF No. 30 at 30-32). Plaintiff compares this case to Konka v. Wal-Mart Stores, No. 97-1013, 1998 U.S. App. LEXIS 1093 (4th Cir. 1998), in which a customer slipped and fell at a Walmart after rainwater blew in from an open door causing the floor to become wet. 1998 U.S. App. LEXIS 1093 at *10-11 (affirming district court's denial of summary judgment because a jury could have reasonably concluded "either that the wet spot was 'placed' there by Wal-Mart because rain water blew in through the open door, or that some employee did have a special duty to observe the area and watch for hazards"). In Konka, the Fourth Circuit concluded that "Wal-Mart's actions in leaving the door open during the rain . . . arguably could have caused the wet condition on which [plaintiff] slipped." Id. at *12. Similarly, here, the flower display, which was known to leak and was actually leaking prior to plaintiff's fall,[7] arguably could have caused the wet condition on

---

[7] Before plaintiff's fall, the video footage shows an orange cone and paper towels in front of the flower display, indicating that the area in front of the flower display was wet. (See ECF No. 25-5 at 0:05-56.20). Mr. Shrestha also testified during his deposition that the presence of an orange cone indicates that the floor remains wet. (ECF No. 30-1 at 20-21). In addition, defendant's corporate designee, Ms. Mimitz, testified during her deposition that the flower display had leaked in the past due to a clogged drain. (ECF No. 30-1 at 106).

11

which plaintiff slipped. A jury, therefore, could reasonably conclude that the water on which plaintiff slipped and fell was "placed" there by defendant, or that a Walmart employee had a duty to observe the area around the leaking flower display and watch for hazards. See id. at * 11. Accordingly, summary judgment is not warranted on this issue.

Alternatively, defendant asserts that plaintiff is barred from recovery based on her contributory negligence. (ECF No. 25-1 at 15-16). "A plaintiff's contributory negligence operates as an absolute bar to recovery under Maryland law." Powell v. Delta Airlines, Inc., Civil No. AW-4-2791, 2005 WL 8174686, at *2 (D. Md. 2005) (citing Major v. CSX Transp., Inc., 278 F. Supp. 2d 597, 616 (D. Md. 2003) (quotation marks omitted)). Contributory negligence is "the doing of something that a person of ordinary prudence would not do, or the failure to do something that a person of ordinary prudence would do, under the circumstances." Thomas v. Panco Mgmt. of Maryland, LLC, 423 Md. 387, 417-18, 31 A.3d 583, 602 (2011) (citations and quotation marks omitted). The defendant has the burden of proving contributory negligence. Atlantic Mut. Ins. Co. v. Kenney, 323 Md. 116, 135, 591 A.2d 507, 516 (1991). In addition, the issue of contributory negligence is ordinarily a question of fact to be decided by a jury. Dell v. DeTar, 2017 WL 3835679, at *6 (D. Md. 2017) (citing Campbell v. Baltimore Gas & Elec. Co., 95 Md. App. 86, 93, 619 A.2d 213, 216 (1993)). While contributory negligence may be decided as a matter of law, a court may do so only in "very narrow circumstances." Dell, 2017 WL 3835679, at *6 (citing Catler v. Arent Fox, LLP, 212 Md. App. 685, 727-28, 71 A.3d 155, 180 (2013) ("To establish contributory negligence as a matter of law, the act relied on must be distinct, prominent and decisive, and one about which ordinary minds cannot differ.")).

In this case, defendant argues that plaintiff was contributorily negligent because she should have seen the water on the floor and avoided it. (ECF No. 25-1 at 15). Specifically, defendant

asserts that plaintiff "was standing in the immediate vicinity of the area where she later [fell] for approximately five minutes prior to her alleged occurrence, and she walked back and forth over the area immediately prior to her fall." (Id. at 16). Plaintiff, however, testified during her deposition that she was looking straight ahead to push her cart prior to her fall. (ECF No. 25-2 at 9). Plaintiff's testimony also suggests that she may have been preoccupied prior to her fall by looking at peppers on the vegetable wall.[8] (Id.) Based on this evidence, reasonable minds could differ as to whether plaintiff was contributorily negligent in not observing the water on the floor in the area where she fell. See Wiseman, 2017 WL 3334858, at *7 (rejecting defendant's argument that plaintiff was contributorily negligent when she failed to observe and slipped on a blackish, dark liquid on the floor, holding that "a jury could find that a prudent person while shopping at a store would not be continuously looking at the floor"); see also Tennant v. Shoppers Food Warehouse Md. Corp., 115 Md. App. 381, 385, 693 A.2d 370, 377 (1997) (holding that a jury was entitled to consider whether plaintiff's attention was reasonably focused on selecting produce on display when she tripped and fell on a pile of cabbage at a grocery store). As a result, here, whether plaintiff was contributorily negligent in failing to observe and avoid the water on the floor is a question of fact to be decided by a jury. See id. Accordingly, there is no basis for summary judgment on this issue.

---

[8] Plaintiff testified that at the time that she fell she was looking at peppers located "[o]n the shelf [and] [o]n the wall." (ECF No. 25-2 at 9).

## IV.     CONCLUSION

For the foregoing reasons, defendant's Motion for Summary Judgment (ECF No. 25) is DENIED.  A separate order will be issued.


March 1, 2022                                          /s/
                                                       Beth P. Gesner
                                                       Chief United States Magistrate Judge